MORTON & CRAIG LLC
John R. Morton, Jr., Esq.
110 Marter Ave.
Suite 301
Moorestown, NJ 08057
Telephone: (856)866-0100
Attorney for: Hyundai Motor Finance servicer for Hyundai Lease Titling Trust

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN RE:

MARY D. CATHRALL-SCHELLHORN

Case No. 17-24936(JNP)

CHAPTER 7

Hearing Date

CERTIFICATION IN SUPPORT OF MOTION OF HYUNDAI MOTOR FINANCE FOR RELIEF FROM THE AUTOMATIC STAY

GLORIA GREER certifies as follows:

1. I am employed by Hyundai Motor Finance ("Hyundai") and am familiar with the facts of this case. Hyundai is the servicer for Hyundai Lease Titling Trust.

2. On 11-4-13, the debtor and executed a Lease for the lease of a 2013 HYUNDAI more particularly described in the following paragraph. The lease was assigned to Hyundai Lease Titling Trust and the debtor became indebted to Hyundai Lease Titling Trust in accordance with the terms of same. Hyundai Lease Titling Trust is the owner of the vehicle. True copies of the lease and title are annexed hereto.

3. The following information sets forth the make, model and serial number of the vehicle, the original terms of the lease, the average retail and trade-in value of the vehicle, and the current status of the debtor's lease:

A. Make, model and serial number of motor vehicle:

2013 HYUNDIA SONATA

Serial number: 5NPEB4ACXDH804055

B. Original lease terms:

(i) Total of payments: $16,144.32 plus lease end purchase option, sales tax and other charges if vehicle purchased at lease end.

(ii) Term: 48 months

(iii) Monthly payment: $336.34

(iv) First payment due: 8-29-15

C. Clean retail value: $9,825.00*

Clean trade-in value: $7,725.00*

*Values derived from NADA Official Used Car Guide, FEBRUARY 2018

D. **Delinquency status:**

**LEASE HAS ENDED AND VEHICLE HAS BEEN RETURNED**

**Arrears: N/A**

Statement of amount due

(i) Lease Buyout: $12,165.6424 as of 2-7-18**

**Lease buyout includes lease end purchase option, but not sales tax, counsel fees, official fees, or other charges if vehicle is purchased at lease end and do not include charges for high mileage or vehicle reconditioning.

Hyundai Motor Finance as servicer for Hyundai Lease Titling Trust requests stay relief for the following reasons:

a. The lease ended on 11-4-17. The vehicle was returned to the dealership by the debtor on 11-2-17. Hyundai requires stay relief to sell the vehicle and apply the proceeds of sale to the lease balance.

I CERTIFY THAT THE FOREGOING STATEMENTS MADE BY ME ARE TRUE. I AM AWARE THAT IF ANY OF THE FOREGOING STATEMENTS MADE BY ME ARE WILLFULLY FALSE, I AM SUBJECT TO PUNISHMENT.

Dated: 2/8/18

Plano, TX

*Gloria Greer* (signature)
Gloria Greer

# LEASE

**Lease Date:** 11/04/2013     [ ] Business, Commercial, or Agricultural Purpose Lease

**Lessor Name, Business Address and Phone Number:**
BURNS BUICK-GMC, INC
500 ROUTE 70
MARLTON, NJ 08053

**Lessee(s) Name(s) and Residence Address(es):**
MARY D CATHRALL-SCHELLHORN
21 MEADOWLARK RD
STRATFORD NJ 08084
County: N/A

1. **Parties and Agreement to Lease.** In this Lease, "you" and "your" mean the lessee. "We," "us" and "our" mean the original lessor and the party to whom the original lessor intends to assign the Lease. These terms, conditions and disclosures govern your lease with us and after assignment, with the party to whom we have assigned the Lease (the "Assignee"). Disclosures in this Lease are made on behalf of the lessor, and after assignment, on behalf of the Assignee. Each of you who signs the Lease is individually liable to us for all Lease obligations. You are leasing the Vehicle described below (the "Vehicle") from us. You agree to pay all amounts due under the Lease and fulfill all your obligations under the Lease. You intend to use the Vehicle primarily for personal, family or household purposes unless the "Business, Commercial, or Agricultural Purpose Lease" box above is checked in this Lease. "e" means an estimate. The Consumer Leasing Act Disclosures shown below are also terms of this Lease.

## 2. Description of the Leased Property (The "Vehicle")

| New/Used | Year | Make | Model | Body Style | Vehicle ID # | Odometer |
|---|---|---|---|---|---|---|
| NEW | 2013 | HYUNDAI | SONATA | 4DR | 5NPEB4ACXDH804055 | 9 |

If the Vehicle has a Monroney label, the manufacturer's suggested retail price on such label is $ 23285.00

Equipped with (no entry means no such equipment):
- ___ Spd Manual Trans   XX Air Conditioning   XX Power Door Locks   ___ Power Seats   ___ 4 Wheel Drive   XX AM/FM Stereo
- XX Automatic Trans   XX Tilt Wheel   XX Power Steering   XX Power Mirrors   ___ Tow Package   ___ Tape
- ___ Diesel Engine   ___ Leather Seats   XX Power Brakes   XX Power Windows   XX Cruise Control   XX CD
- Other: ___

**PRIOR USE(S) OF VEHICLE (IF APPLICABLE):** This item applies only if the odometer reading disclosed above is higher than 1000 miles. The prior use(s) of the Vehicle was/were: [X] personal, family or household [ ] demonstrator [ ] livery [ ] daily rental [ ] police [ ] unknown.

## 3. CONSUMER LEASING ACT DISCLOSURES

| Amount Due at Lease Signing or Delivery | Monthly Payments | Other Charges (not part of your monthly payment) | Total of Payments (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| (Itemized below)* $ 2573.64 | Your first monthly payment of $ 336.34 is due on 11/04/2013, followed by 47 payments of $ 336.34 due on the 4TH of each month. The total of your monthly payments is $ 16144.32 | Disposition fee (if you do not purchase the Vehicle) $ 400.00 <br> $ N/A <br> $ N/A <br> Total $ 400.00 | $ 18781.62 |

### Itemization of Amount Due at Lease Signing or Delivery:

**Amount Due at Lease Signing or Delivery:**
- Capitalized cost reduction: $ 1500.00
- First monthly payment: $ 336.34
- Refundable security deposit: $ N/A
- Refundable reconditioning reserve: $ N/A
- Title fees TIRE TAX: $ 7.50
- Registration fees: $ 281.30
- UPFRONT TAXES: $ N/A
- DOC FEE: $ 448.50
- Total: $ 2573.64

**How the Amount Due at Lease Signing or Delivery will be paid:**
- Net trade-in** allowance: $ N/A
- Rebates and noncash credits: $ 1500.00
- Amount to be paid in cash: $ 1073.64
- Total: $ 2573.64

### Your monthly payment is determined as shown below:

- Gross capitalized cost. The agreed upon value of the Vehicle ($ 26289.43) and any items you pay over the Lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance).   $ 28849.43
- Capitalized cost reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost.   − $ 1500.00
- Adjusted capitalized cost. The amount used in calculating your base monthly payment.   = $ 27349.43
- Residual value. The value of the Vehicle at the end of the Lease used in calculating your base monthly payment.   − $ 11409.65
- Depreciation and any amortized amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease term.   = $ 15939.78
- Rent charge. The amount charged in addition to the depreciation and any amortized amounts.   + $ 204.54
- Total of base monthly payments. The depreciation and any amortized amounts plus the rent charge.   = $ 16144.32
- Lease payments. The number of payments in your Lease (This is also the number of months in your Lease).   ÷ 48
- Base monthly payment.   = $ 336.34
- Monthly sales/use tax.   + $ N/A
-   + $ N/A
-   + $ N/A
- Total monthly payment.   = $ 336.34

**Early Termination.** You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

**Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 12000 miles per year at the rate of 20. c per mile.

**Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease term for $ 11409.65 and a purchase option fee of $ 0. The purchase option price does not include official fees such as those for taxes, tags, license and registration.

**Other Important Terms.** See your lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

## 4. **Description of the Trade-In Vehicle

| Year | N/A | | |
|---|---|---|---|
| Make | N/A | Model | |

- Gross Amount of Trade-in Allowance: $ N/A
- Prior Credit or Lease Balance: − $ N/A
- Net Trade-in Allowance (If less than 0, then enter 0): = $ N/A

## 5. Itemization of Gross Capitalized Cost

- Agreed upon value of the Vehicle: $ 26289.43
- Other amounts included in the gross capitalized cost:
  - Taxes: $ 1135.00
  - Title and Registration fees: $ N/A
  - Lease acquisition fee: $ 595.00
  - Documentation fee: $ N/A
  - Prior credit or lease balance on trade-in vehicle: $ N/A ‡
  - $ N/A ‡
- ‡ No add permitted unless lessor has paid prior credit or lease balance.
- Optional Products and Services:
  - Mechanical Breakdown Protection: $ N/A
  - Service Contract: $ 830.00
  - Gap Contract or Coverage or Waiver: $ N/A
  - $ N/A
  - $ N/A
  - $ N/A
- Total Gross Capitalized Cost: $ 28849.43

6. **Official Fees and Taxes.** The total amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included in your monthly payments or assessed otherwise: $ 2246.50 (e) (The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed.)

7. **Warranties.** The Vehicle is subject to the following express warranties: if the Vehicle is new, the Vehicle is subject to the manufacturer's standard new car warranty. [ ] If this box is checked, the Vehicle is subject to the following express warranty or guarantee: ____

If the Vehicle is not new, and no warranty is identified in the previous sentence, there is no express warranty on the Vehicle. TO THE EXTENT PERMITTED BY LAW, WE DISCLAIM ANY WARRANTIES IMPLIED BY LAW, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE. If we make a written warranty covering the Vehicle or within 90 days of the Lease Date we extend a service contract covering the Vehicle, this disclaimer will not affect any implied warranties during the term of the warranty or service contract.

8. **Late Payments.** The charge for late payment is LESSER OF $20 OR 10% for any payments not received within 10 days of the date it is due.

9. **Disposition Fee** (See "Return of the Vehicle" on the other side of this Lease): $ 400.00

10. **Early Termination Fee** (See "Terms Concerning Your Early Termination Liability" on the other side of this Lease): $ 400.00

## 11. Optional Products and Services

You are not required to buy any of the following optional products and services to enter into the Lease. The term of any product or service will be the Lease term, unless a different term is shown below. If you decide you want to buy an optional product or service, review the terms of the contract which describes the product or service before you initial below. A completed copy of the contract will be given to you as soon as practicable. By initialing below, you indicate that you want to purchase the optional products and services indicated. If the cost shown below is not shown as part of the Itemization of Amount Due at Lease Signing above, it has been added to the Gross Capitalized Cost (see above).

| Optional Product or Service | Amount or Period | Price | Term | Name of Provider | Approval |
|---|---|---|---|---|---|
| Optional Mechanical Breakdown Protection or Service Contract | 24 MOS 30000 MILES | 830.00 | 24 MOS | AUTO WARR SVCS | Lessee Initials MCS |
| Optional Gap Contract or Coverage, or Gap Waiver | N/A | N/A | N/A | | Lessee Initials |

**SPECIAL NEW JERSEY DISCLOSURES: Total Cost of Lease.** The total cost of this Lease, assuming you do not default and you exercise the purchase option at scheduled Lease termination, is $ 29791.27. This disclosure is required by New Jersey law and is calculated in a manner specified under the law. We calculate this amount by adding the amount Due at Lease Signing or Delivery (minus the first monthly payment and the Refundable Security Deposit), the total amounts to be paid in periodic payments during the Lease term and the amounts imposed on you at the end of the Lease term. Because this disclosure is based on certain assumptions and does not include all costs (such as insurance), your actual cost of this Lease may differ.

## 12. NOTICES

**NOTICE TO THE LESSEE:** YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS AND UNTIL YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE. DO NOT SIGN THIS LEASE BEFORE YOU READ BOTH SIDES OF IT OR IF IT CONTAINS ANY BLANK SPACE TO BE FILLED IN. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS LEASE WHEN YOU SIGN IT. BY SIGNING THE LEASE, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND READ A COMPLETED COPY OF THIS LEASE BEFORE SIGNING IT.

**NOTICE:** THE LESSEE AND THE LESSOR SHALL BE ENTITLED TO REVIEW THE CONTRACT FOR ONE BUSINESS DAY BEFORE SIGNING THE CONTRACT IMMEDIATELY ADJACENT TO THE SIGNATURE LINE OF THE CONTRACT.

**LESSEE SIGNATURES** (check if other than individual(s))   [ ] Corporation [ ] Partnership [ ] LLC or LLP [ ] Sole Proprietorship

Lessee Signature: *Mary D Cathrall-Schellhorn*
Type/Print Lessee Name: MARY D CATHRALL-SCHELLHORN

Lessee Signature: ____
Type/Print Lessee Name: ____

## LESSOR'S ACCEPTANCE AND ASSIGNMENT

The Lessor's authorized signature indicates the Lessor has accepted the terms, conditions and obligations of the Lease and that the Lessor agrees to the "Lessor's Assignment" provision on the other side of this Lease.

Lessor Name: BURNS BUICK-GMC, INC
Assignee Name and Phone Number: HYUNDAI LEASE TITLING TRUST

By: ____
Type/Print Name: ____
Type/Print Title: ____

LAW FORM NO. LAW-100-NJ Rev 4/06

LESSOR COPY

## 13. Default, Repossession and Other Remedies

You will be in default if: You fail to make a monthly payment when it is due; • You fail to pay any amount you owe under the Lease when it is due or when demand is made; • You provide any false or misleading information in any lease application; • You fail to maintain the required insurance; • You lose possession of the Vehicle by confiscation, forfeiture or other involuntary transfer regardless of whether the Vehicle is the subject of judicial or administrative proceedings; • You die and there is no surviving lessee; • The Vehicle is lost, stolen or damaged beyond repair; • You assign the Lease or transfer the Vehicle; • You fail to keep any other promise or obligation under the Lease or violate any other term of the Lease. Notwithstanding any provision of this Lease, if you die and have a surviving spouse, there will be no default if your surviving spouse continues to make the required Lease payments to us.

If you are in default due to non-payment of a monthly payment for 15 days or more and we wish to declare you in default and cancel or terminate this Lease, we must send you a notice of cancellation. If we do, subject to the next sentence, you will have the right to reinstate this Lease as provided in the notice by paying all past due monthly payments, late fees and other amounts due under this Lease, and, if the Vehicle has been repossessed, our costs of repossession, storage and transporting the Vehicle, plus, if we incur them, our reasonable attorneys' fees and court costs. If you reinstate this Lease in this manner, you may continue with this Lease as if no payment default had occurred. You may reinstate this Lease in this manner only one time during the Lease term. You will have no reinstatement right if you default for any reason other than failure to make your monthly payment.

If the Lease is in default, we may at our election, and subject to the previous paragraph, take any one or more of the following actions: We may take any action, such as buying insurance on your behalf, we believe to be required to protect our interest in the Vehicle. Our action will not cure your default. Amounts we spend taking such action will be added to your Lease obligations and will incur Rent charges. If we terminate this Lease upon a default, you authorize us to cancel any optional products and services you bought in connection with this Lease. You direct any provider of such products and services to pay us any refund or credit due on early cancellation. We will apply any refund to your Lease obligations. We may peacefully repossess the Vehicle wherever we may find it. We will give all notices of repossession required by law. You authorize us to enter any property where the Vehicle may be to take possession of it and remove it. We may use the license plates on the Vehicle in moving it to a storage place. After repossession, we will hold the Vehicle free of any rights you may have under this Lease, subject to any right you may have under applicable law to cure the default or recover the Vehicle. Unless you tell us within two business days of any personal property you claim was in the Vehicle when it was repossessed, we will not be responsible for that property.

## 14. Terms Concerning Your Early Termination Liability

(a) You may terminate (end) the lease before the end of the Lease term under the following conditions: If you are not in default under the Lease, you may end the Lease by returning the Vehicle to us and paying us within five business days of the date we make demand your early termination liability (see below).

(b) We may end the Lease before the end of the Lease term under the following conditions: If you are in default, we may end the Lease. You must return the Vehicle to the place we designate. You must pay us, within five business days of the date we make demand, your early termination liability (see below).

Upon early termination you agree to pay the following charges: • Any unpaid monthly payments then due. • The Early Termination Fee, if any, shown in Item 10. • Any official fees and taxes imposed in connection with termination. • The amount by which the adjusted lease balance exceeds the Vehicle's realized value at termination. • If we have to take possession of the Vehicle from you, you will pay us the amount we have to pay for expenses in doing so. • If we have to store the Vehicle and pay storage charges, you will pay us the amount of the storage charges. We will apply some or all of your security deposit to what you owe.

We figure your adjusted lease balance using the 'constant yield' method. 'Constant yield method' means the method of determining the rent charge portion of each base monthly payment under which the rent charge for each month is earned in advance by multiplying the constant rate implicit in the lease times the balance subject to rent charge as it declines during the Lease term. At any given time during the Lease term, the balance subject to rent charge is the difference between the adjusted capitalized cost and the sum of: (i) all depreciation amounts accrued during the previous monthly periods, and (ii) the first base monthly payment. The periodic rent charge calculations are based on the assumption that we will receive your rental payments on their exact due dates and that the lease goes to its full term.

The realized value of the Vehicle is: the price we receive for the Vehicle at disposition; the highest offer we receive for disposition of the Vehicle; or the fair market value of the Vehicle at the end of the Lease term. We will add to the amount you owe us what it costs us to pay someone to dispose of the Vehicle, for example, an auction fee.

(c) To the extent these charges take into account the value of the Vehicle at termination, if you disagree with the value we assign to the Vehicle, you may obtain, at your own expense, from an independent third party agreeable to you and to us, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. We will then use the appraised value as the realized value.

If we have to pay someone to help us collect the amount you owe us, we will add the amount we have to pay to the amount you owe us. This may include reasonable fees of attorneys who are not our salaried employees, and court costs, if permitted by law.

## 15. Other Terms and Conditions

**Insurance.** You agree to maintain in your name the following types and amounts of primary insurance for the Lease term and until you return the Vehicle: Bodily injury insurance with $300,000/$500,000 limits; property damage insurance with $50,000 limits; collision, fire, theft and comprehensive coverage with a maximum deductible of $500. You may obtain insurance from anyone reasonably acceptable to us. We must be shown as additional insured and loss payee. We may endorse your name on any check we receive in payment of a claim. Your policy must state that we will be given at least 10 days' notice of any cancellation, reduction or other material coverage change. If your insurer does not pay a claim for any reason, it will mean that you have not maintained the required insurance. You will pay for any loss that may result because you do not maintain required insurance or because the insurer does not pay a claim.

**NOTICE: PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE TO OTHERS IS NOT INCLUDED IN THIS LEASE.**

**Your Gap Liability and Gap Waiver.** You are liable for the "gap amount." The "gap amount" is the difference between the amount you would owe (or which you would owe in the absence of gap protection) under this Lease in the event of a total loss of the Vehicle before the end of the Lease term and the actual cash value we receive from your insurance company or from any other person. For a fee, we may waive our right to collect the gap amount from you. If we do, the price of such waiver appears in Item 11. Our waiver of our right to collect the gap amount from you is conditioned on our receipt of: (a) all amounts due under the Lease as of the date of our receipt of the insurance proceeds, or, if applicable law or the gap protection contract provides, as of the date of the Vehicle's total loss; (b) an amount from you equal to your deductible and any other subtractions from the actual cash value of the Vehicle under your policy; and (c) insurance proceeds from the insurance policy required under this Lease, or the equivalent amount of the value of the Vehicle established by reference to an official used car publication as of the date of loss. Alternatively, you may buy gap protection from a third party as identified in Item 11 and the terms and conditions of such protection will be in a contract provided by the third party.

**Standards for Wear and Use.** You may be charged for excess wear and use at the end of the scheduled Lease term. The following standards apply for determining unreasonable or excess wear and use: • You will not paint, alter or modify the VIN number of the Vehicle; • You will not add, remove or modify any accessories, equipment or parts without our prior written permission; • The Vehicle will not have road damage, chips, scratches, cracks, or damage to the glass, body, bumpers, frame or interior, mechanical or electrical malfunction, torn, burned, stained or shredded upholstery and interior, dented trim or molding, damage from water, sand, or freezing; • You must return the Vehicle with operating interior and exterior lights; • You must return the Vehicle with 4 matching tires of equal quality to the originals and a spare of equal quality and type as the original; • When you return the Vehicle, each Vehicle tire must have not less than 1/8 inch of tread remaining at its shallowest point; and • While you have possession of the Vehicle it must be capable of passing any inspection. You may obtain at the end of the Lease term at your expense, a professional appraisal of the amount required to repair or replace parts or the amount by which the excess wear and use reduces the value of the Vehicle. This professional appraisal must be performed by an independent third party agreed to by us and by you, which appraisal will be final and binding on us and you.

**Security Deposit.** If a charge for a refundable security deposit appears in Item 3, this paragraph applies. Unless required by law, we do not keep the security deposit separate in a bank or earmarked on our books. We may apply some or all of the security deposit to what you owe. Any unused security deposit will be returned to you at the end of the Lease. We have no fiduciary duty to you with respect to the security deposit unless such duty is imposed by law. No interest, increase or profit on the security deposit will accrue or be paid to you.

**Optional Products and Services.** If Item 5 reflects that you have agreed to purchase Optional Products and Services, you understand and agree that the original Lessor may retain all or a part of the purchase price shown for such Optional Products and Services, depending upon whether the Optional Products and Services are purchased by the original Lessor from a third party or are provided directly by the original Lessor.

**Reconditioning Reserve.** If a charge for a refundable reconditioning reserve appears in Item 3, this paragraph applies. If you fail to pay any charges for excess mileage or excess wear and tear, we may use the reconditioning reserve to recondition the Vehicle for resale. The reconditioning reserve will be refunded to you if: (i) you buy the Vehicle at or before the end of the Lease term; or (ii) you pay any excess mileage and/or excess wear and tear charges due under this Lease. No interest, increase or profit will accrue or be paid to you on the reconditioning reserve.

**Option to Purchase Vehicle Upon Early Termination.** You have an option to buy the Vehicle prior to the end of the term. The price will be the adjusted lease balance (see "Terms Concerning Your Early Termination Liability", above) plus any other charges due and unpaid under this Lease. You must also pay any taxes or official fees (for taxes, tags, licenses and registration) imposed on our sale of the Vehicle to you.

**Return of the Vehicle.** You will return the Vehicle in clean condition. If you do not buy the Vehicle from us under your purchase option, you agree to return the Vehicle to us at a place we designate. When you return the Vehicle, you must give us a completed, signed odometer disclosure statement. You agree to pay us any amounts you owe under the Lease and have not paid. We may apply all or part of your security deposit to what you owe us. If you keep the Vehicle after the date you are supposed to return it, you will pay us a monthly amount equal to the monthly Lease payment and other amounts that may come due. Your payment does not permit you to keep the Vehicle unless you get our permission in advance. You will pay us upon return of the Vehicle a disposition fee as shown in "Disposition Fee" on the other side of this Lease.

**Maintenance.** You will maintain the Vehicle in good working order and repair. You will pay all operating costs, such as gasoline, oil, and replacement tires. You will, at your expense, service the Vehicle according to the owner's manual maintenance schedule. If the Vehicle is recalled, you will have the recall repairs or service performed.

**Registration, Parking Tickets and Taxes.** You must keep the Vehicle currently registered. You must pay all parking tickets and traffic fines relating to the Vehicle. If you do not pay such tickets and fines, we have the right to do so for you, and you will pay us upon demand. We may add the amount to what you owe us if you do not pay us when we make demand. You must pay when due or reimburse us if we pay for you all government charges, fees and taxes whether assessed on you, us, or the Vehicle. You will not have to pay our income taxes. If you do not pay the charges, fees and taxes and interest or penalties are assessed (unless the interest or penalties are a result of our negligence), you must pay the interest or penalties when due or reimburse us if we pay them. You must pay personal property taxes assessed on the Vehicle, whether you are billed for them by the government or whether we pay them and bill you for them or include the amount of such taxes as part of your monthly payment.

**Use of the Vehicle.** You will keep the Vehicle free from any liens or claims. You have the risk of loss, and are responsible for the Vehicle's damage or destruction. You will not allow unlicensed drivers to drive the Vehicle. You will not use the Vehicle for more than 30 days outside the state where the Vehicle was first titled without our prior written permission.

**Acknowledgment.** You acknowledge you have examined the Vehicle. You acknowledge that the Vehicle is equipped as you want, and that it is in good condition. You accept the Vehicle for all purposes of the Lease.

**Indemnification.** You agree to indemnify us and hold us and our assignees, agents, and insurers harmless from all damages, injuries, claims, demands, and expenses, including reasonable attorney's fees to the extent permitted by law, arising out of the condition, maintenance, use or operation of the Vehicle, including a claim under the strict liability doctrine.

**Your Odometer Obligations.** You will maintain the odometer of the Vehicle so that it always reflects the Vehicle's actual mileage. If the odometer is at any time inoperative, you will provide us with reasonable evidence of the Vehicle's actual mileage. If you are unable to do so, you will pay us our reasonable estimate of any reduction of the Vehicle's fair market value caused by the inability to determine the Vehicle's actual mileage. You will provide us with an odometer certification at any time we request one. We may request more than one certification during the term of this Lease.

**Assignment and Transfer of the Vehicle.** You may not assign the lease or transfer the Vehicle without our prior written permission. We may assign all of our rights under this Lease. Any person to whom this Lease is assigned may reassign it.

**Waiver.** We do not waive our rights or remedies under this Lease by failing to exercise them at any time.

**Giving Notice.** Notices may be given personally or sent by first class mail. Notice mailed to us must be sent to the address shown in this Lease. Notices shall be deemed given to us when they are personally given or actually received at our address. Notices shall be deemed given to you when they are personally given or when placed in the mail, addressed to you at your address then shown on our records, even though you might not actually receive our mailed notice. You agree that 10 days' notice is a reasonable notice period, unless state law requires a longer period, in which case you agree that the state required period is reasonable.

**General.** If any part of the Lease is invalid, unenforceable or illegal in any jurisdiction, the part that is invalid, unenforceable or illegal will not be effective as to that jurisdiction. The rest of the Lease will be enforceable. This Lease is our entire agreement. We have made no promises to you not contained in this Lease. Any change to this Lease must be written and signed by you and us. If any part of this Lease is found by a court or other dispute resolution body to be void or unenforceable, this Lease is to be read as if that part were never contained in this Lease.

**Lessor's Assignment.** Pursuant to the terms of that certain agreement between Lessor and the assignee named on the other side of this Lease ("Assignee") for the assignment of leases by Lessor to Assignee from time to time, Lessor hereby assigns all right, title and interest in the Lease and the Vehicle and rights the Lessor may have under any guaranty executed in connection with the Lease, with full powers to Assignee to collect and discharge all obligations, any guaranty and this assignment.

FORM NO. LAW-100-NJ (6-99)



# CERTIFICATE OF TITLE

| PREFIX | IDENTIFICATION NUMBER | SUFFIX | YEAR | MAKE | MODEL | BODY TYPE |
|---|---|---|---|---|---|---|
| 5NPEB | 4ACXD H8040 | 55 | 2013 | HYU | SON | 4 DR |

| TYPE OF TITLE | DUPLICATE NO. | GVW/GCWR | COLOR/MTL/HP | DEALER ID | AXLES/PROP | FUEL |
|---|---|---|---|---|---|---|
| STANDARD | | 7 | WT | 07234N | 2 | 0 |

| FEE | ISSUE DATE | VIN REPLACEMENT | | MILEAGE | | STATUS |
|---|---|---|---|---|---|---|
| 60.00 | 11-13-2013 | | | 9 | | A |

OWNER(S)
HYUNDAI LEASE TITLING TRUST
210 COMMERCE SUITE 100
IRVINE    CA 92602

F-FLOOD    S-SALVAGE
P-POLICE   T-TAXI
L-LEMON LAW
A-ACTUAL MILEAGE
N-NOT THE ACTUAL MILEAGE
M-MILEAGE EXCEEDS THE MECHANICAL LIMITS

NUMBER OF OWNERS: 1
NUMBER OF LIENHOLDERS: 0

OWNER DL/CC

I, CHIEF ADMINISTRATOR OF THE MOTOR VEHICLE COMMISSION, OF THE STATE OF NEW JERSEY, DO HEREBY CERTIFY THAT EVIDENCE OF OWNERSHIP OF THE STATE OF NEW JERSEY, OF THE DESCRIBED ARTICLE, HAS BEEN RECORDED AND FILED WITH ME, AND I DO HEREBY ISSUE THIS CERTIFICATE OF OWNERSHIP SUBJECT TO ANY AGREEMENT OR LIEN, IF ANY AS STATED.

SIGNATURE

CONTROL NUMBER: AN669867

### State of New Jersey
MOTOR VEHICLE COMMISSION

LIEN RELEASED BY:
SIGNATURE
TITLE    DATE

LIEN RELEASED BY:
SIGNATURE
TITLE    DATE

ALTERATION OR ERASURE VOIDS THIS TITLE    KEEP IN SAFE PLACE

**VOID IF ALTERED**

---

THIS IS A RECEIPT DOCUMENT ONLY    ↑ FOLD AND TEAR AT PERFORATION ↑

VIN: 5NPEB4ACXDH804055    MILEAGE: 9 A DUP:    STATUS:
HYU 2013 4 DR    SON    WT    7    AXLE: 2    DEALER ID: 07234N
HYUNDAI LEASE TITLING TRUST    TITLE I    : 60.00
210 COMMERCE SUITE 100    SALES TAX : 0.00
IRVINE    CA 92602    LFIS    : 0.00
    TOTAL    : 60.00
0.00 I STANDARD

AN669867
CUSTOMER COPY
STATE OF NEW JERSEY